IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TRUGREEN LIMITED PARTNERSHIP,** * | |
| * | |
| Plaintiff/Counter Defendant, * | |
| v. * | Civil Action No. RDB-20-0335 |
| * | |
| **ALLEGIS GLOBAL SOLUTIONS, INC.,** * | |
| * | |
| Defendant/Counter Claimant. * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On February 7, 2020, Plaintiff TruGreen Limited Partnership ("TruGreen" or "Plaintiff") brought a five-count suit against Defendant Allegis Global Solutions, Inc. ("AGS" or "Defendant") alleging breach of contract as well as other state law torts and seeking this Court's determination of its entitlement to certain remedies. (*See* ECF Nos. 1, 32 *SEALED*.) On March 13, 2020, AGS asserted its own claim for breach of contract against TruGreen with a filing of a single-count Counterclaim. (*See* ECF No. 16.) On February 18, 2021, this Court held an audio motions hearing[1] in which it heard arguments of counsel related to two pending motions: Defendant AGS's Motion to Strike Plaintiff's Affirmative Defenses (ECF No. 25) and Defendant AGS's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 38). Having reviewed the submissions of the Parties and heard arguments of counsel, this Court GRANTED IN PART and DENIED IN PART Defendant AGS's Motion to Strike (ECF

---

[1] This audio hearing was conducted pursuant to Standing Orders 2021-01 and 2021-04 in light of the reduction in operations due to the COVID-19 pandemic.

No. 25).  This Court also GRANTED IN PART and DENIED IN PART Defendant AGS's Motion to Dismiss (ECF No. 38), specifically DENYING the motion with respect to Count I and GRANTING that motion as to Counts II-V.  These rulings were confirmed in a Letter Order (ECF No. 71) immediately following that hearing on February 18, 2021.  At the hearing, this Court stated it would provide this supplemental Memorandum Opinion to elaborate on its rulings with respect to the Motion to Dismiss (ECF No. 38).

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Plaintiff TruGreen is a Delaware limited liability partnership in the business of lawn care and pest control with its principal place of business in Memphis, Tennessee.  (ECF No. 32 ¶ 1 *SEALED*.)  Due to the nature of its business, TruGreen purportedly must hire thousands of employees to prepare for the growing season. (*Id.* ¶ 6 *SEALED*.)  These workers are predominantly high-volume, field-based employees ranging from lawn technicians, to branch sales employees, to call center employees.  (*Id.*)  As TruGreen planned for the 2019 growing season, it decided to employ Recruitment Process Outsourcing ("RPO"), seeking to transfer most of its high-volume, field-based employee recruiting to an external provider, Defendant AGS.  (*Id.* ¶ 7 *SEALED*.)

AGS is a Maryland corporation with its principal place of business in Hanover, Maryland and a purported leader in "global talent solutions."  (*Id.* ¶ 2 *SEALED*.)  TruGreen claims that AGS was selected from a field of five different RPO firms to which it sent requests

2

for proposal. (*Id.* ¶ 11 *SEALED*.) TruGreen alleges that it picked AGS on the basis of certain express and/or implied promises made by AGS throughout the selection process, including that (i) AGS could meet all of TruGreen's recruitment and other needs at a significantly lower cost than any of the other participants in the request for proposal process; (ii) AGS would conduct enough and sufficient advertising to meet TruGreen's stated recruitment needs and goals; (iii) AGS would assign the necessary personnel to accomplish TruGreen's objectives; and (iv) AGS made representations consistent with the statements on its website to induce TruGreen to contract with it. (*Id.* ¶ 13 *SEALED*.) AGS further represented that because it was larger and employed multiple centers, it could accomplish the objectives of the contract with less cost within the time constraints TruGreen specified. (*Id.* *SEALED*.) Finally, AGS also made representations regarding its available technology, including an artificial intelligence system known as "Olivia." (*Id.* *SEALED*.)

Upon selecting AGS as its RPO, TruGreen and AGS entered into a contract pursuant to which AGS undertook to provide talent procurement services for TruGreen. (*Id.* ¶ 2 *SEALED*.) The contract between the Parties is the Recruitment Processing Outsourcing Agreement, dated November 1, 2018 ("RPOA" or the "Agreement", filed as ECF No. 14-1 *SEALED*). (ECF No. 32 ¶ 5 *SEALED*.) TruGreen asserts that throughout the course of the RPOA, AGS continued to provide TruGreen with express assurances and promises that AGS could and would meet TruGreen's recruitment and other needs. (*Id.* ¶ 15 *SEALED*.) For example, in response to early complaints regarding AGS's performance due to lack of applicants/interviews and insufficient advertising, AGS purportedly promised it would take steps to correct the problems and continued to maintain it could successfully

provide its agreed-upon services. (*Id.* *SEALED*.) In particular, TruGreen claims that AGS promised it would add more recruiters, increase advertising, and adjust strategy in underperforming markets to meet candidate demand. (*Id.* *SEALED*.) The Amended Complaint provides summaries of emails from individuals at each company in support of these allegations. (*Id.* *SEALED*.)

Overall, TruGreen asserts that AGS "failed miserably" to perform under the terms of the RPOA. (*Id.* ¶ 18 *SEALED*.) TruGreen further asserts that AGS promised to recruit and place between 15,000 and 19,000 employees but failed to recruit and place even half of that number. (*Id.* *SEALED*.) TruGreen complains that for long periods of time, some of its branches received no applicants for employment. (*Id.* *SEALED*.) It additionally asserts that the "chatbot" Olivia was ineffective, failed to work as promised, and failed to schedule interviews in sufficient numbers. (*Id.* *SEALED*.) Further, while AGS agreed to perform the contract for $6.2 million, AGS asked for and TruGreen agreed to increase the amount of the contract price to just over $7 million. (*Id.* *SEALED*.) TruGreen claims that AGS knew or should have known that it was not performing as the RPOA required, yet it failed to take actions to improve its performance or otherwise meet its obligations under the contract. (*Id.* ¶ 20. *SEALED*.)

TruGreen asserts that as a result of AGS's material breach of the RPOA, it has suffered incidental and compensatory damages arising from AGS's contractual failures, including failed recruiting, interference with TruGreen's business processes and profitability, AGS's acceptance of payment of almost $5 million for services that were not provided as promised, and that TruGreen's profits also suffered. (*Id.* ¶ 21 *SEALED*.) TruGreen also claims that

due to the nature of TruGreen's business, AGS's breaches of the RPOA could not be fully rectified or the lost sales recaptured, and that when it became clear that AGS was not going to be able to fully perform, TruGreen exercised its duty to mitigate damages by performing AGS's own contractual duties. (*Id.* ¶ 22 *SEALED*.) TruGreen alleges that the cost of that effort was approximately $2.5 million. (*Id.* *SEALED*.)

TruGreen filed suit against AGS on February 7, 2020. (ECF No. 1.) It amended that Complaint on July 2, 2020. (ECF No. 32 *SEALED*.) The Amended Complaint asserts five separate claims against Defendant AGS. Count I of TruGreen's Amended Complaint alleges breach of contract, pointing to specific provisions of the RPOA which AGS allegedly breached. (*Id.* ¶¶ 25-35 *SEALED*.)

Count II of the Amended Complaint alleges negligent misrepresentation. (*Id.* ¶¶ 36-45.) Specifically, TruGreen alleges that by virtue of the business and contractual relationship between TruGreen and AGS, AGS had a duty of care to TruGreen requiring AGS to transmit accurate information to TruGreen. (*Id.* ¶ 38.) AGS made representations that it had expertise in recruiting and placing employees, could perform at a certain cost, would be able to recruit and place between 15,000 and 19,000 employees, and would generally deliver results better than anyone else. (*Id.* ¶ 39.) Such representations were allegedly either intentional or negligent misrepresentations of AGS's ability to perform in TruGreen's industry. (*Id.*)

In Count III, TruGreen alleges promissory estoppel/detrimental reliance, claiming that AGS made multiple clear and definite promises to TruGreen, including post-contractual promises to take active steps to improve its recruitment and placement of employees. (*Id.* ¶¶ 47-48.) TruGreen further alleges that AGS reasonably expected its promises would induce

action or forbearance on TruGreen's part, and that such promises did in fact induce such reliance. (*Id.* ¶¶ 49-50.)

Count IV alleges that AGS has improperly continued to demand payments under the RPOA that are either unearned or unrecoverable based on the terms of the RPOA, or subject to recoupment/setoff from amounts claimed by TruGreen. (*Id.* ¶ 55.) TruGreen seeks a declaratory judgment that states that TruGreen owes no further funds to AGS pursuant to the RPOA. (*Id.* ¶ 56.) In Count V, TruGreen also asks this Court to hold that TruGreen is entitled to recoupment and/or setoff from AGS any amounts it would otherwise owe under the RPOA in lieu of the damages caused to it by AGS's breach of the RPOA and other misconduct. (*Id.* ¶ 61.)

On March 13, 2020, Defendant AGS filed a single-count Counterclaim against TruGreen. (ECF. No. 16.) AGS alleges that TruGreen materially breached its duty to cooperate in the implementation and performance of the RPOA in several ways. On April 6, 2020, TruGreen filed an Answer to the Counterclaim in which the Plaintiff asserted twenty-six affirmative defenses labeled A through Z. (ECF No. 20.)

On April 27, 2020, Defendant AGS filed a Motion to Strike Plaintiff's Affirmative Defenses (ECF No. 25), challenging 22 of the 26 asserted defenses. On August 20, 2020, the Defendant also filed a Motion to Dismiss the Plaintiff's Amended Complaint (ECF No. 38), seeking dismissal of all five counts asserted by TruGreen and an order foreclosing TruGreen from recovery of any damages for any of its claims. On February 18, 2021, this Court held an audio motions hearing in which this Court heard arguments of counsel related to both pending motions. As confirmed by Letter Order (ECF No. 71), this Court ruled on the record granting

in part and denying in part both motions. Specifically, this Court GRANTED the Defendant's Motion to Dismiss with respect to Counts II through V of the Amended Complaint and DENIED that motion with respect to Count I of the Amended Complaint as well as with respect to the Defendant's request that this Court should enter an order barring TruGreen from recovering any damages.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359,

365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

**ANALYSIS**

Defendant AGS moved to dismiss all five counts of Plaintiff TruGreen's Amended Complaint, arguing that each count failed to state a plausible claim for relief. (*See* ECF No. 38-1.) As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C.

§ 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). At the hearing of February 18, 2021, this Court denied the Defendant's Motion with respect to Count I, for the reasons set forth on the record, holding that the Amended Complaint stated a plausible claim for relief for breach of contract under Maryland law. The remainder of this Court's rulings in GRANTING the Motion to Dismiss (ECF No. 38) as to Counts II through V were also set forth on the record but are supplemented as follows.

### A. Negligent Misrepresentation (Count II)

To state a claim for negligent misrepresentation under Maryland law, a plaintiff must allege: (1) "defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement;" (2) "the defendant intend[ed] that his statement [would] be acted upon by the plaintiff;" (3) "the defendant ha[d] the knowledge that the plaintiff [would] probably rely on the statement, which, if erroneous, [would] cause loss or injury;" (4) "the plaintiff, justifiably, [took] action in reliance on the statement;" and, (5) "the plaintiff suffer[ed] damage proximately caused by the defendant's negligence." *Cooper v. Berkshire Life, Ins. Co.*, 810 A.2d 1045, 1053-54 (Md. Ct. Spec. App. 2002) (citing *Martens Chevrolet, Inc v. Seney*, 439 A.2d 534 (Md. 1982) (internal citations omitted)). To determine whether a defendant owes a duty under the first element, courts look to the nature of the harm likely to result from a failure to exercise due care and the relationship between the parties. *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 674 (D. Md. 2013).

In this case, Plaintiff TruGreen specifically alleges that AGS's tort duty arises from "the business and contractual relationship between TruGreen and [AGS]" and seeks recovery of

9

"lost profits and . . . $2.5 million" in monetary damages. (ECF No. 32 ¶¶ 37, 45 *SEALED*.) This is insufficient to state a claim for negligent misrepresentation. It is well-established under Maryland law that "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jacques v. First Nat'l Bank*, 515 A.2d 756, 759 (Md. 1986). "Absent special circumstances, the court is reluctant to 'transform an ordinary contractual relationship . . . into a fiduciary relationship.'" *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012) (citing *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992)). Such "special circumstances" include contracts between ordinary consumers and professionals with a high degree of skill such as physicians, attorneys, architects, and public accounts. *See Jacques*, 515 A.2d at 763. No such circumstances exist in this case. "Under Maryland law, a claim for negligent misrepresentation is improper when the only relationship between the parties is contractual, both parties are sophisticated, and the contract does not create an express duty of care in making representations." *CapitalSource Fin., LLC v. Pittsfield Weaving, Co., Inc.*, 571 F. Supp. 2d 668, 674 (D. Md. 2006).

This principle of Maryland law is often called the "economic loss doctrine." Under this doctrine, "'courts in this district have attempted to limit remedies to contract law where the loss is purely economic and the parties engaged in arms-length commercial bargaining.'" *Chubb & Son*, 919 F. Supp. 2d 666 at 675 (quoting *Gruppo Essenziero Italiano, S.p.A. v. Aromi D'Italia, Inc.*, No. CCB-08-65, 2011 WL 3207555, at *8 (D. Md. July 27, 2011) (collecting cases)); *see also Steven B. Snyder, M.D., P.A. v. Cynosure, Inc.,* No. RDB-18-2049, 2019 WL 1386727, at *4 (D. Md. Mar. 27, 2019). The doctrine "serves as a boundary between contract

law, the purpose of which is to enforce the expectations of the parties to an agreement, and tort law, the purpose of which is to protect people and property from foreseeable risks of harm by imposing upon others a duty of reasonable care." *Cash & Carry Am. Inc. v. Roof Solutions, Inc.*, 117 A.3d 52, 61 (Md. Ct. Spec. App. 2015). As this Court has previously noted, when "the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Chubb & Son*, 919 F. Supp. 2d at 674 (quoting *Jacques*, 515 A.2d at 759)). As TruGreen's only alleged harm with respect to this Count is economic, TruGreen cannot bring a claim for negligent misrepresentation on such basis.

Finally, TruGreen's claim for negligent misrepresentation would also seemingly be barred by the Agreement. The Plaintiff's arguments with respect to Count II center on representations allegedly made by Defendant AGS during the request for proposal process, as well as after the signing of the agreement in November 2018. (*See* ECF No. 32 ¶¶ 36-45 *SEALED*.) The RPOA contains three contractual provisions which would prevent TruGreen's reliance on these sorts of extracontractual provisions not found within the text of the RPOA itself. First, the RPOA contains a Warranty Disclaimer, disclaiming both express and implied warranties which are not included in the text of the RPOA. (*See* RPOA, § 7.4, ECF No. 14-1 *SEALED*.) Second, the RPOA also contains an integration clause, which provides that the RPOA "supersedes all prior oral or written communications concerning the subject matter of the Agreement . . . ." (*See id.* § 13.13 *SEALED*.) Third, the contract provides that any amendments, modifications, or supplements to the RPOA must be "in writing." (*See id.* § 13.15 *SEALED*.) Maryland law recognizes the validity of these types of

11

contractual provisions. *See Cynosure, Inc.*, 2019 WL 1386727, at *7 (upholding validity of warranty disclaimer); *Hovnanian Land Inv. Grp., LLC. v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 985-86 (Md. 2011) (upholding validity of integration and non-modification clause).

Even if such provisions would not directly bar TruGreen's claims on the basis of extracontractual representations, TruGreen's reliance on such representations in the face of these provisions would be unreasonable. As provided above, a plaintiff may only prevail on a claim for negligent misrepresentation where "the plaintiff, justifiably, [took] action in reliance" on the challenged statement. *Cooper*, 810 A.2d at 1053-54 (citing *Martens Chevrolet*, 439 A.2d 534 (internal citations omitted)). As the Maryland Court of Appeals explained in *Parker*, "[t]he terms of a written contract can, of course, be used as evidence of the reasonableness of the [party's] reliance upon alleged misrepresentations contrary to those terms." 604 A.2d at 530. "[A] person cannot reasonably rely upon . . . allegedly fraudulent statements made in the face of plainly contradictory contractual language." *Id.* For all these reasons, Plaintiff TruGreen has failed to state a plausible claim for relief under Count II. Count II of the Amended Complaint is DISMISSED.

### B. Promissory Estoppel (Count III)

To state a claim for promissory estoppel/detrimental reliance under Maryland law, a person must allege: (1) the existence of "a clear and definite promise"; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;" (3) "which does induce actual and reasonable action or forbearance by the promisee"; and (4) "causes a detriment which can only be avoided by enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996). Promissory

estoppel is a *quasi-contractual* claim, meaning "it is an equitable remedy that permits recovery 'where, in fact, *there is no contract*, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003) (emphasis added) (quoting S*wedish Civil Aviation Admin v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (internal quotations and citations omitted)). Under Maryland law, no quasi-contractual claim may rise "when a contract exists . . . concerning the same subject matter on which the quasi-contractual claim rests . . . ." *Swedish Civil*, 190 F. Supp. 2d at 792 (internal citations omitted). The general rule does not apply "when the express contract does not fully address a subject matter." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000).

In this case there is no dispute that the parties are bound by the Agreement, which deals with the Defendant AGS's obligations with respect to performing recruiting services for TruGreen. (*See* ECF No. 32 ¶ 5 *SEALED*.) TruGreen does not argue that the contract is invalid or unenforceable. Instead TruGreen argues that the RPOA does not fully address the subject matter of its claims. (ECF No. 45 at 35 *SEALED*.) TruGreens asserts its claim for promissory estoppel on the basis of claims made both "[i]n order to become TruGreen's service provider" and "[a]fter the parties entered into the RPOA." (ECF No. 32 ¶¶ 47-48 *SEALED*.) Yet, even if TruGreen's claim for promissory estoppel is based on such extracontractual representations, it is unclear to this Court how claims regarding the services performed or not performed by AGS related to its recruitment services for TruGreen would fall outside the subject matter of the RPOA. Maryland law allows a plaintiff to bring a claim for promissory estoppel as "an alternative means of obtaining contractual relief." *Md. Transp.*

13

*Auth. Police Lodge No. 34 Fraternal Order of Police v. Md. Trans. Author,* 5 A.3d 1174, 1227 (Md. Ct. Spec. App. 2010), *rev'd in part on other grounds*, 21 A.3d 1098 (Md. 2011).  However, given this Court's denial of the Defendant's Motion to Dismiss TruGreen's breach of contract claim in Count I, TruGreen need not seek promissory estoppel as an alternative remedy in this case.  TruGreen is seeking recovery under Count III *in addition to* its claims in Count I.  This is the sort of claim Maryland law flatly prohibits.  *See Odyssey Travel*, 262 F. Supp. 2d at 262.  Count III of the Amended Complaint is DISMISSED.

### C. Declaratory Judgment (Count IV)

In Count IV, TruGreen seeks a Declaratory Judgment that states that it owes no further funds to Defendant AGS pursuant to the Agreement.  The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Act is "'an enabling [statute], which confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  District courts have "great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)).  Discretion to decline to exercise jurisdiction exists "even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Wilton*, 515 U.S. at 282.

Generally, a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). A proper declaratory judgment suit must involve "a controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Pa. Nat'l Mutual Cas. Ins. Co. v. Alliance Roofing & Sheet Metal, Inc.*, No. WDQ-12-1427, 2013 WL 1120587, at *3 (D. Md. Mar. 14, 2013) (quoting *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990)). Additionally, the courts' power to hear declaratory judgment claims "should not be exercised for the purposes of trying issued involved in cases already pending, . . . or for the purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction." *Quarles*, 92 F.2d at 324. As the United States Court of Appeals for the Fourth Circuit stated in *Quarles*, "The object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by the courts of the states." *Id.*

In this case, TruGreen claims that AGS has improperly continued to demand payments under the RPOA for what TruGreen alleges to be unearned or unrecoverable fees. (ECF No. 32 ¶ 55 *SEALED*.) TruGreen seeks a declaratory judgment that states that TruGreen owes no further funds to AGS pursuant to the RPOA. (*Id.* ¶ 56 *SEALED*.) Given that this case involves two competing claims for breach of the Agreement, adjudicating this claim in the

15

context of a Declaratory Judgment would not serve any useful purpose. What, if any, damages are due to either party will become relevant upon the resolution of those competing claims. Until that time, this Court's opinion with respect to Count IV would be merely advisory. This Court in the exercise of its discretion declines to consider the Plaintiff's claim for Declaratory Judgment, and Count IV is DISMISSED.

### D. Recoupment/Setoff (Count V)

In Count V, TruGreen asks this Court to hold that TruGreen is entitled to recoupment and/or setoff from AGS any amounts it would otherwise owe under the Agreement in lieu of the damages caused to it by AGS's breach of the RPOA and other misconduct. (ECF No. 32 ¶ 61 *SEALED*.) Maryland law recognizes both recoupment and setoff as viable legal theories. *See Pines Plaza Ltd. P'ship v. Berkley Trace, LLC*, 66 A.3d 720, 733 n.22 (Md. 2013) (quoting *Imbesi v. Carpenter Realty Corp.*, 744 A.2d 549 (Md. 2000)). However, the Fourth Circuit has held that under Maryland law, "plaintiffs may not bring affirmative actions for recoupment." *Carter v. Mortg. Elec. Registration Sys., Inc.*, 680 F. App'x 178, 180 (4th Cir. 2017) (citing *Bull v. United States*, 295 U.S. 247, 262 (1935)). In *Carter,* the Court affirmed the district court's dismissal of the plaintiff's claim for recoupment alleged as a "stand-alone cause of action." *Id.* The proper vehicle for a claim for recoupment or setoff is an affirmative defense. *Id.* (citing *Bull v. United States*, 295 U.S. 247, 262 (1935)). TruGreen asserts recoupment/setoff as an affirmative defense in its Answer to AGS's Counterclaim. (*See* Affirmative Defense Y, ECF No. 20.) In accordance with Fourth Circuit precedent, Count V is DISMISSED.

### E. Damages

In its Motion to Dismiss, AGS not only sought dismissal of all five counts of the Amended Complaint, but also that this Court enter an order foreclosing TruGreen from recovering any damages for any of its claims, or in the alternative, an order barring TruGreen from recovering anything other than legitimate compensatory damages arising directly from breach of the RPOA. (*See* ECF No. 38-1 at 16.) AGS pointed to Section 11.1 of the RPOA, entitled "Exclusion of Damages," which provides that "in no event," either AGS or TruGreen shall recover "indirect, incidental, punitive, exemplary, reliance or special or consequential damages, including damages for lost profits, loss of use, business interruption, or loss of data in connection with or arising out of [the RPOA]." (*See* RPOA § 11.1, ECF No. 14-1 *SEALED*.) While this section is entitled "Exclusion of Damages," the inclusion of such provision does not mean that all damages must be excluded. Section 11.1 must be read in the context of the entire RPOA. *See Jones v. Hubbard*, 740 A.2d 1004, 1016 (Md. 1999). Section 11.2 imposes a damages cap of $8 million, implying some form of damages is permitted. (*See* RPOA § 11.2, ECF No. 14-1 *SEALED*.) However, this Court does not believe that an order related to the availability of certain damages for either party is appropriate at this stage of this case. This is an issue that may be addressed at trial. The Defendant's Motion to Dismiss with respect to damages is DENIED.

## CONCLUSION

For these aforegoing reasons, and the reasons stated on the record at the hearing of February 18, 2021, the Defendant AGS's Motion to Dismiss (ECF No. 38) was DENIED IN PART and GRANTED IN PART. Specifically, this Court GRANTED the Motion with respect to Counts II, III, IV, and V of the Plaintiff TruGreen's Amended Complaint and such

counts are DISMISSED.  This Court DENIED the Motion with respect to Count I and the Defendant's request to enter an order determining the availability of damages.  Such rulings were confirmed in a Letter Order on February 18, 2021 (ECF No. 71).


Dated: February 23, 2021.

                                                _____/s/_____
                                                Richard D. Bennett
                                                United States District Judge